## Cash Tax Refunds

GEORGE W. KEITEL, Deputy Attorney General, and DAVID STAHL, Attorney General, February 1, 1962.—We have your request to be advised as to whether the amendment of November 7, 1961, to article III, sec. 16,

of the Pennsylvania Constitution is self-executing or requires enabling legislation.

As amended, article III, sec. 16, of the Pennsylvania Constitution now reads as follows:

"No money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officer; *but cash refunds of taxes, licenses, fees and other charges paid or collected, but not legally due, may be paid as provided by law, without appropriation from the fund into which they were paid, on warrant of the proper officer.*" (Italics supplied.)

The italicized portion represents the language added by the 1961 amendment.

The rule as to self-executing constitutional provisions is stated thus in Davis v. Burke, 179 U. S. 399, 403, 21 S. Ct. 210, 45 L. Ed. 249 (1900), quoted with approval in O'Neill v. White, 343 Pa. 96, 100, 22 A. 2d 25, 27, (1941):

" 'Where a constitutional provision is complete in itself it needs no further legislation to put it in force. When it lays down certain general principles, as to enact laws upon a certain subject, or for the incorporation of cities of certain population, or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution.' "

The Supreme Court of Pennsylvania has determined whether a variety of constitutional provisions were self-executing. Those decisions are summarized in 7 P. L. Encyc. 203 "Constitutional Law," §14, as follows:

"In specific cases, various provisions of the Constitution relating to such matters as preservation of powers in the people, the removal of appointive officers, city sinking funds, prohibition of multiple office hold-

ing, and the abolition and transfer of county office functions in Philadelphia, have been held to be self-executing, while in other cases provisions relating to matters involving vacancies in elective office, judicial districts, magistrates' courts, vacancies in the Supreme Court, trial of civil cases without a jury, uniformity of taxation, payment of county officers' salaries, submission of charters to voters, methods of voting for corporate directors, issuance of corporate stocks or bonds, and the taking of private property for public use, have been held to be not self-executing."

The 1961 amendment to article III, sec. 16, can be construed as self-executing only if no ancillary legislation is necessary to the enjoyment of the right to receive a cash refund without the appropriation of moneys therefor.

At present, section 503(a) of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §503, authorizes the Board of Finance and Revenue to make such refunds ". . . out of any appropriation or appropriations made for the purpose," or to credit the account of the party entitled to the refund. The constitutional amendment will now permit the legislature to amend section 503 of The Fiscal Code so as to permit cash refunds out of the fund into which the taxes, licenses, fees or other charges for which refund is being sought were originally paid.

There appear to be at least four reasons why the 1961 amendment to article III, sec. 16, should be construed as not being self-executing without the need for further legislation:

### 1. *This Section Deals With Limitations on Legislative Power.*

The amendment is, in effect, an exception to a prohibition against the disbursement of funds without appropriations. This deprives the amendment of an

initial positive effect. It merely describes one situation where it will not be unconstitutional to disburse State moneys without a specific appropriation.

In Commonwealth ex rel. Griest, 196 Pa. 396, 408, 409, 46 Atl. 505, 507 (1900), the court construed in detail the significance of article III of the Pennsylvania Constitution, saying, in part:

". . . The 3d article of the constitution is confined exclusively to the subject of legislation. It is entitled 'Of legislation' and only purports to be an authorization and limitation of the legislation of the commonwealth. *It prescribes the manner in which the business of making laws must be conducted*, and the subjects with reference to which it may, and may not, be exercised. . . . The remaining sections [from the 9th] down to the 26th, contain prohibitive limitations as to some subjects and directory provisions as to others, *but all of an exclusively legislative character.* . . . the entire article is confined exclusively to the subject of legislation, that is the actual exercise of the lawmaking power of the commonwealth in its usual and ordinary acceptation. . . ." (Italics supplied.)

Since the provisions in article III are of an exclusively legislative character, it is presumed that section 16 deals primarily with legislative power, and not with the creation of individual rights.

### 2. *The Language Is Permissive Rather Than Mandatory*

The constitutional amendment uses the word "may" instead of "shall." This indicates a permissive rather than a mandatory provision. Unless the context requires otherwise, the word "may" is construed to be permissive rather than mandatory.

In Commonwealth v. A. M. Byers Co., 346 Pa. 555, 561, 31 A. 2d 530, 532 (1943), the court said:

". . . The word 'may' clearly implies discretion-

ary power. The language is permissive, rather than mandatory. . . ."

In Mikell v. Philadelphia School District, 359 Pa. 113, 122, 58 A. 2d 339, 344 (1948), the court said:

". . . The legal distinction between directory and mandatory laws is as applicable to fundamental as it is to statutory law: . . ."

Since, as noted supra, article III of the Pennsylvania Constitution deals with limitations upon the legislature, the use of the word "may" in the amendment to section 16 indicates that the legislature has now been authorized to permit cash refunds without the necessity of making appropriations. The legislature having obtained such permission is now free to adopt legislation that expands the rights to obtain cash refunds.

### 3. *Legislature Has Plenary Power Over Refunds*

Refunds of taxes and license fees are matters of legislative grace, and not of constitutional right, and " 'the Commonwealth is not obliged to entertain claims against it at all . . .' ": Land Holding Corporation v. Board of Finance and Revenue, 388 Pa. 61, 67, 130 A. 2d 700 (1957). Failure to comply with the express conditions on the right to obtain a refund results as an absolute bar to the right itself: Federal Deposit Insurance Corporation v. Board of Finance and Revenue, 368 Pa. 463, 470, 84 A. 2d 495 (1951). The statutory limitation upon any action by the State in consenting to be sued must be strictly construed: Box Office Pictures, Inc., v. Board of Finance and Revenue, 402 Pa. 511, 166 A. 2d 656 (1961).

These and other cases amply demonstrate that the legislature has the complete power to determine under what conditions refunds for taxes, licenses and similar fees may be obtained. No language in the amendment to article III, sec. 16, suggests that this legislative

power is being modified or repealed. The amendment simply enlarges the power of the legislature.

### 4. The Language "As Provided by Law" Implies Legislative Action

The use of the phrase "as provided by law" further suggests that the specific details for granting refunds still remain in the hands of the legislature.

When the Constitution of January 1, 1874, was adopted, it provided in article III, sec. 23 that "The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner *as shall be provided by law.*" In Wattson v. The Chester and Delaware River Railroad Company, 83 Pa. 254, 256 (1877), the court held that the new provision was not immediately operative so as to defeat existing law. The court said:

". . . If the effect were held to be immediate, the consequence would be, that there would be no law whatever to regulate the power; for in this case the power of the court to change the venue is 'to be exercised in such manner as shall be provided by law.' Until the manner of its exercise is prescribed by a suitable law, it is evident the court can have no guide as to the cases, the grounds, or the mode of making the change. . . ."

In Bell v. Farwell, 176 Ill. 489, 52 N. E. 346, 348 (1898), it was contended that a provision in the Kansas Constitution that "dues from corporations shall be secured by individual liability of stockholders to an additional amount equal to the stock owned by each stockholder, and such other means *as shall be provided by law,*" was self-executing. The court rejected this contention, stating (p. 493):

". . . It is apparent from the reading of the provision itself that legislation was contemplated in order that it might be properly enforced, otherwise the last

clause, 'and such other means as shall be provided by law' would never have been incorporated in it. . . ."

The analogous rule of statutory construction is stated thus in Guenthoer's Estate, 235 Pa. 67, 73, 74, 83 Atl. 617 (1912):

". . . where the reference in an adopting statute is to the law generally which governs the particular subject, and not to any specific act or part thereof designated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied: . . ."

The phrase "as provided by law" in the 1961 amendment to article III, sec. 16, will permit refunds to be obtained under the law in effect at the time the refund is sought.

Therefore, we are of the opinion that the 1961 amendment to article III, sec. 16, is not self-executing, and that enabling legislation will be required in order to permit the granting of cash refunds of taxes, licenses, fees or other charges without the necessity of an appropriation.